## SAVIERS, ESTATE OF, In Re

Ohio Appeals, 2nd Dist, Franklin Co

No 2655. Decided Oct 22, 1936

John W. Bricker, Attorney General, Columbus, William J. Ford, Asst. Atty. General, Columbus, W. H. Middleton, Jr., Waverly, and Bert W. Miller, Columbus, for the Tax Commission of Ohio.

Donald J. Hoskins, Prosecuting Attorney, Columbus, and Eugene Carlin, Asst. Prosecuting Atty., Columbus, for Henry Frank, Treasurer of Franklin County, Ohio.

James I. Boulger, Columbus, and David E. Evans, Columbus, for David E. Evans, Executor of the Estate of Columbus D. Saviers.

C. B. Folkerth, Columbus, and Thomas B. Phillips, for The Prudential Insurance Company of America.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact by the Tax Commission of Ohio from a judgment of the Common Pleas Court. The cause was submitted in that court and is submitted here on an agreed statement of facts. From this statement we take certain pertinent parts which are necessary to an appreciation of the legal question presented for determination.

Columbus D. Saviers died testate November 25, 1926, and David E. Evans was named executor of decedent's estate. Among other real estate owned by Mr. Saviers at his death was a lot known as No. 132 of Morrison Park Addition at 1728-1730 Bryden Road in the city of Columbus. The will of Mr. Saviers, among other things, devised the aforesaid real estate to Nora R. Benner. Emmett L. Benner and Edna L. Janes for and during their natural lives * * *, and after their death to four sisters of the testator and the heirs of their body (share and share alike) in fee simple, * * *.

On May 21, 1928, the executor instituted his action in Common Pleas Court to sell the real estate of decedent including the aforesaid property to pay debts. In this action all devisees and legatees were made party as was The Columbian Building & Loan Company which held a mortgage on the aforesaid real estate. This action culminated in an order of sale on June 3, 1929, at which sale Edna L. Janes and Nora R. Benner purchased the aforesaid real estate for the sum of $16,500.00 cash. The order of sale was returned on June 17, 1929, and the sale was on that date confirmed and deed ordered made to the purchasers, and in the same entry the court directed the executor to distribute the proceeds of the sale of the aforesaid real estate as follows:

| | |
|---|---:|
| Taxes and assessments, cost now lien on parcel No. 1 ...........$ | 656.28 |
| To The Columbian Building & Loan Co. the amount of its mortgage lien, ......... ......... ....... | 7635.66 |
| To Edna L. Janes, Nora R. Benner and Emmett L. Benner, the value of their life estate in parcel No. 1 | 8208.06 |
| Total ....... ............. .....$ | 16500.00 |

Pursuant to the order of the court the executor executed and delivered his deed for the aforesaid premises to Edna L. Janes and Nora R. Benner of date June 17, 1929, which deed was duly filed as of said date. As a part of the purchase price of the said real estate The Prudential Insurance Company of America loaned to Edna L. Janes and Nora R. Benner the sum of $11,000.00 to secure which it took a note and mortgage on the said real estate which mortgage was filed and recorded on June 17, 1929. In the action by the executor to sell real estate neither the treasurer of Franklin County nor the Tax Commission of Ohio was made a party.

On March 7, 1929, on the application of the executor the Probate Court determined the amount of inheritance tax due on the succession to the aforesaid real estate.

On September 21, 1932, the Probate Court redetermined the inheritance tax on the aforesaid real estate and found that the successions passing to Edna L. Janes, Emmett L. Benner and Nora R. Benner should be taxed in the amount of $394.22. On June 28, 1934, the inheritance tax theretofore fixed by the Probate Court remaining delinquent and unpaid a transcript of the inheritance tax proceedings in the Probate Court was filed in the Common Pleas Court by the Prosecutor of Franklin County, Ohio, and on July 11, 1934, an action was instituted by the executor of the estate of Columbus D. Saviers to sell the aforesaid property to satisfy the unpaid inheritance tax lien. Following the institution of this action the Tax Commission of Ohio was made a party defendant and on its behalf and on behalf of Henry Frank as Treasurer of Franklin County, Ohio, filed a cross-petition. The Prudential Insurance Company of America, a party defendant to the action, demurred to the answer and cross-petition of the Tax Commission and the County Treasurer, and thereafter filed its answer and cross-petition seeking sale of the aforesaid real estate upon which it had a mortgage, and the trial court ordered the property sold upon the cross-petition of The Prudential Insurance Company of America and held that of the proceeds of the sale the company had priority over the claim of the Tax Commission and the County Treasurer for the inheritance tax.

It is the claims of the appellants, the Tax Commission, the County Treasurer and the executor that by the terms of §5336, et seq., GC, upon the death of Mr. Saviers the inheritance tax attached to the aforesaid real estate and from that time remained a lien on the real estate until it was paid. Contra this position it is urged by counsel for the Prudential Insurance Company that the tax provided by the above sections is assessed upon the passing of the succession to the real estate heretofore described and that as it was necessary to sell said real estate to pay debts there was no passing of the succession, the purchasers at the public judicial sale, though life tenants under the will, took nothing thereunder but took by purchase. It is conceded by counsel that no authority is to be found upon the narrow question here presented and that it must be determined upon the language of the statutes involved and upon principles which may be germane to our question to be found in authorities cited in their respective briefs.

Sec 5336 GC provides:

"Taxes levied under this subdivision of this chapter shall be due and payable at the time of the succession, except as herein otherwise provided, but in no case prior to the death of the decedent.

"Taxes upon the succession to any estate or property, or interest therein limited, dependent or determinable upon the happening of any contingency or future event, and not vested at the death of the decedent, by reason of which the actual market value thereof can not be ascertained at the time of such death, as provided in this subdivision of this chapter, shall accrue and become due and payable when the persons or corporations then beneficially entitled thereto shall come into actual possession or enjoyment thereof. Such taxes shall be and remain a lien upon the property passing until paid, and the successor and the executors or administrators of the general estate of the decedent, and the trustees of such property shall be personally liable for all such taxes, with interest as hereinafter provided, until they shall have been paid as hereinafter directed. Such an administrator, executor or trustee, having in charge or in trust for distribution any property the succession to which is subject to such taxes, shall deduct the taxes therefrom, or collect the same from the person entitled thereto. He shall not deliver, or be compelled to deliver, any specific legacy or property, the succession to

which is subject to said taxes, to any person, until he shall have collected the taxes thereon. He may sell so much of the estate of the decedent as will enable him to pay said taxes in like manner as he would be empowered to do for the payment of the debts of the decedent."

The following portion of the section sets forth the language about which much of the controversy revolves: "Taxes levied under this subdivision of this chapter shall be due and payable at the time of the succession, * * * but in no case prior to the death of the decedent." "Such taxes shall be and remain a lien upon the property passing until paid, and the successor and the executors or administrators of the general estate of the decedent, and the trustees of such property shall be personally liable for all such taxes, with interest as hereinafter provided, until they shall have been paid as hereinafter directed," and the last sentence thereof, "He may sell so much of the estate of the decedent as will enable him to pay said taxes in like manner as he would be empowered to do for the payment of the debts of the decedent."

The taxes fixed by the section became a debt due and payable on the date of the death of the decedent. §10510-2 GC controlling the action to sell real estate to pay debts, provides that the action may be brought as soon as the executor or administrator ascertains that the personal property in his hands is insufficient to pay all the debts of the deceased, together with the allowance to the widow and children for twelve months and the costs of administering the estate. Included, then, within the debts which constituted all the debts of the deceased, was the succession tax, due and payable under §5336 GC. Chamberlin v Stecher, 78 Oh St, 271; Wellman v Cleveland Trust Co., 107 Oh St, 267.

An examination of the sections pertinent to real estate taxes, in conjunction with that part of the code which relates to the inheritance tax, reveals a helpful analogy. §5671 GC provides that the lien of the state for taxes levied for all purposes in each year upon real estate shall attach at the date fixed therein and continue until such taxes with any penalties accruing thereon are paid. Thus, in terms the lien for real estate taxes continues for the same duration as the lien for the inheritance tax.

Though under the language of §10510-15

GC it appears that it is necessary to make the county treasurer a party to an action to sell real estate to pay debts, we do not think a failure so to do is a fatal defect because the personal repre- sentative is charged with knowledge of this lien and by the terms of §5692 GC, when the real estate is sold, it is the obligation of the court to order the taxes and penalties, and the penalties, and the interest thereon, against such lands, to be discharged out of the proceeds of such sale. This is a statute of general application. We find nothing in the code which prevents the application of §5692 GC to the distribution of the proceeds from the sale of the real estate by the executor to pay debts in the instant cause.

Sec 10510-46 GC providing for the disposition of money arising from sale of real estate, a part of the new Probate Code and of general application, provides that such money shall be applied as follows:

"1. To discharge the costs and expenses of the sale, * * *.

"2. To the payment of mortgages, judgments and tax liens against the ward or deceased person, according to their respective priorities of lien, so far as they operated as a lien on the estate of the deceased at the time of his death or on the estate of the ward at the time the action was commenced; which shall be apportioned and determined by the court, on reference to a master or otherwise."

These specific provisions of statute had application to the distribution of the proceeds of the sale made by the executor to pay the debts. The amount of the succession tax had been fixed and presumably certified by the Probate Court before the sale was made. The order of distribution recites the order of payment from the proceeds of the sale:

"1. Taxes and assessments and costs now a lien on Parcel No. 1, $656.28."

This order was pursuant to the mandate of the statutes.

Looking again at §5336 GC, we note not only the provision "such taxes shall be and remain a lien upon the property passing until paid," but also this language:

"And the executors or administrators of the general estate of the decedent, and the trustees of such property shall be person- ally liable for all such taxes, with interest, as hereinafter provided, until they shall have been paid as hereinafter directed."

No purpose is here indicated to fix a primary and secondary liability. The property which and the persons who are put upon the same basis of liability.

There would be no difficulty in construing that portion of the section which makes the taxes a lien "upon the property passing until paid" in the instances where the real estate actually passed to a devisee or heir and was not thereafter disturbed by the administrator of the general estate. In Ohio the real estate of decedent descends upon his death directly to his heirs or devisees, and they possess the legal title and are entitled primarily to its possession and control, but it is also recognized that under our statutory provisions incident to the administration of estates the title of heirs and devisees is not absolute but provisional, dependent upon whether or not the realty is required for the payment of debts. **Douglas v Massie, 16 Ohio, 271; Smyth v Anderson, 31 Oh St, 144; Ling v Strom, 12 C.C. (N.S.) 161.**

Inasmuch as the succession which passed to the life tenants who purchased the real estate was not permitted to remain in their possession and the executor sold the said real estate by coercion, as against the life tenants, we see no difficulty in construing the statute the same as the sections affecting sales of real estate upon which general taxes have become a lien.

Under §10510-44 GC the deed made in pursuance of the order of the court in the instant case is prima facie evidence that the petitioner in all respects observed the directions of the court and complied with the requirements of the law, and vested title to the real estate in the purchaser, in like manner as if conveyed by the deceased in his lifetime * * * free from disability.

To give application to this section we must harmonize that part of §5336, GC, touching the lien upon the property until paid.

It has long been held by our courts that the purchaser of real estate at a judicial sale to pay debts of an estate holds the land discharged of all liens because the proceeds, which are thereafter treated as real estate, become the subject upon which the lien attaches. **Bank of Muskingum v Carpenter, 7 Ohio (Part 1), 21.**

In **Holloway v Stuart, Administratrix,** 19 **Oh St,** 474, it was held that the lien of a mortgagee upon property sold to pay debts in an action in which the mortgagee had not been a party was not affected by the order of sale and the proceeds thereunder. However, construing the Administrator's ·Act of 1840 before the amendment which controlled the adjudication in the Holloway case, supra, the Supreme Court held in **Defrees, Exr. of Judson D. Miller,** deceased **v Greenham, Admrx., etc.,** 11 **Oh St,** 486, that where a mortgagee was not a necessary party but the statute made it the obligation of the executor to pay mortgage liens according to their respective priorities, insofar as the same operate as a lien on the estate of the deceased at the time of his death, the purchaser took the land discharged of the mortgage lien. Judge Scott writing the opinion at page 488 said:

"The priority which one creditor may have acquired over others, by virtue of a mortgage or other specific lien upon the land sold, the statute transfers to the fund arising from the sale; and to this fund he must look instead of the land."

This seems to us to be the reasonable conclusion to be drawn in this case. By the terms of the statute the executor is empowered to sell the real estate of the decedent to pay the inheritance tax which has attached by virtue of §5336 **GC** and in part this could have been the cause of the sale by the executor. It must therefore, be presumed that the sale was made subject to the same legal consequences as heretofore followed the sale of decedent's real estate to pay his debts. It is difficult to conclude that the framers of the law intended that real estate which an executor had sold to pay inheritance tax would pass to the purchaser burdened with a lien, assuring the payment of that tax. To so hold we must find specific requirement and authority within the terms of the section. Construing it so as to harmonize with other sections which are in pari materia we do not find such authority.

The Prudential Insurance Company loaned its money to the purchasers at· the judicial sale and though they were two of the life tenants they took their title as purchasers. The lien of The Prudential Insurance Company of America as mortgagee on the proceeds of the sale of the real estate ordered on its cross-petition is prior to the lien, for the collateral inheritance tax. Judgment accordingly.

BARNES, PJ, and BODEY, J, concur.