Hart, J.
In both causes the principal question of law presented is the order in which the proceeds of the judicial sales should be distributed among the various claimants — the state of Ohio, the United States, and other creditor lienholders, where the total funds are insufficient to pay all such claims. The state of Ohio claiming priority under the state laws insists that it is entitled to have all its taxes accrued at the time of sale paid first out of the proceeds of such sales.
Section 2, Article XII of the Constitution of Ohio, provides for taxation of lands and improvements thereon by uniform rule according to value. Section 5328, Ohio General Code (now Section 5709.01, Ohio Revised Code), provides for. the taxation of all real estate. Section 5671, Ohio General Code (now Section 5719.01, Ohio Revised Code), provides as follows:
“The lien of the state for taxes levied for all purposes, in each year, shall attach to all real property subject to such taxes on the day preceding the second Monday of April, annually, and continue until such taxes, with any penalties * * * accruing thereon, are paid * * *. All personal property subject to taxation shall be liable to be seized and sold for taxes. The personal property of a deceased person shall be liable, in the hands of an executor or administrator, for any tax due on it from the testator or intestate.
“Taxes charged on any tax duplicate, other than those upon real estate specifically as such, shall be a lien on real property of the person charged therewith from the date of the filing of a notice of such lien, as provided by law.” (Italics supplied.)
Section 5692, Ohio General Code (now Section 5719.25, Ohio Revised Code), provides:
“When land so held by tenants in common is sold upon proceedings in partition, or taken by the election of any of the parties to such proceedings, or real estate is sold at judicial sale, or by administrators, executors, guardians, or trustees, the court shall order the taxes, penalties, assessments then due, *207 and interest thereon, which are a lien on such land or real estate at the time of the sale, to be discharged out of the proceeds of such sale or election.” (Italics supplied.)
The judgments of the Common Pleas Court in the instant causes were that the real estate taxes accrued at the time of sale should be paid out of the proceeds of the judicial sales of the properties in question before the payment of any other liens. Clearly, this is required if full force of the statutes above quoted is applied, and under the provisions of these statutes the courts of this state have for many years uniformly ordered the payment of such taxes before the payment of other liens.
The United States contends, however, that certain federal statutes operate to modify the effect of the Ohio statutes as above quoted and are controlling. We quote in full Sections 3670 and 3671 and pertinent parts of Section 3672 of the United States Internal Revenue Code, as follows:
“Section 3670. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.”
“Section 3671. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.”
“Section 3672. (a) Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—
“(1) In the office in which the filing of such notice is authorized by the law of the state or territory in which the property subject to the hen is situated, whenever the state or territory has by law authorized the filing of such notice * # V’
It is to be noted that the above provisions creating liens for federal taxes have been in effect substantially in their present form since 1866. The requirements of notice to subsequent mortgagees, purchasers and judgment creditors were added by *208 amendment in 1913 for the purpose of protecting such mortgagees, purchasers, and judgment creditors from loss incident to undisclosed federal liens.
The appellants claim that federal liens for delinquent taxes are not specific liens on the real estate but liens only on the interest of the owners thereof in such real estate; that, although the federal statutes create federal liens, they do not in terms give them priority over state liens; and that state real estate taxes are chargeable upon the real estate itself as taxes in rem, and not upon the interest of the owners thereof, as judgment and other attaching liens against them must be.
In the solution of this problem, it will be profitable to consider the relationship of the public-lien claimants, both federal and state, and the character of the liens which each is asserting against the lands in question.
Undoubtedly, when the federal government as the original owner of all public lands sold the same to private owners within the states, it could have sold them subject to direct federal taxes and could have made such taxes prior first liens upon all such lands, but it did not do so. On the contrary, it sold the entire interest in such lands to private owners tax free so far as federal taxes were concerned, and gave the state governments complete governmental control of such lands except as specifically reserved.
Under the taxation scheme of this state, real estate taxes run with the land, attach to the real estate itself, become direct and specific liens thereon, and underlie the owner’s interest therein. Clark v. Lindsey, 47 Ohio St. 437, 25 N. E., 422, 9 L. R. A., 740. In case of a judicial sale of the real estate, a finding is made by the court as to the amount of taxes due as a charge against the real estate, but no personal judgment is rendered against the owner therefor. In such case, under the provisions of Section 5692, Ohio General Code (Section 5719.25, Ohio Revised Code), the real estate taxes which are a lien on the land at the time of the sale must be paid out of the proceeds of the sale; and under the provisions of Section 5671, Ohio General Code (Section 5719.01, Ohio Revised Code), if such taxes are not paid out of the proceeds of the sale, they continue to be a charge against the real estate until paid. See Grafton v. Mong, Aud., 60 Ohio *209 App., 228, 20 N. E. (2d), 722, affirmed, 134 Ohio St., 416, 17 N. E. (2d), 649.
On the contrary, the liens of creditors, including tax Hens of the United States, are personal debts of the owner, and, in the absence of express statutory provision to the contrary, can be chargeable to and made liens alone upon his interest in the property. Mackenzie v. United States, 109 F. (2d), 540, 541.
The federal statute creating the liens contended for by the United States in these causes, also seems to limit the coverage of the liens to the property and rights of property of the owners of the real estate in question. Section 3670 of the United States Revenue Code, under which the federal liens are imposed, provides:
“If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.” (Italics supplied.)
We are also of the opinion that it was the intention of Congress in enacting Section 3672, subordinating federal tax liens to mortgage and judgment liens as therein provided, to also subordinate such federal liens to such other incumbrances as have priority over those mortgages and judgment liens. Otherwise, it is impossible to give such state tax liens priority over mortgage and judgment liens on the same property.
The Court of Appeals in its opinion said:
“The law covering this dispute is found in the Constitution of the United States and the acts of Congress, and the statutes of Ohio, and as interpreted in the case of United States v. City of New Britain, 347 U. S., 81, 98 L. Ed., 520, 74 S. Ct., 367. The net result of this law is that the lien of the state for taxes takes priority over all other liens, while the lien of the federal government for federal liens takes priority over all liens except those of mortgages and judgment creditors.”
The interpretation which the Supreme Court gave to the facts and issues in the New Britain case above referred to, which are strikingly similar to those involved in the instant causes, seems to confirm the position taken by the Court of Appeals in the causes here under consideration.
In the New Britain case, the major part of the taxes in *210 volved were real estate taxes assessed by the municipality of New Britain under authority of the general laws of the state of Connecticut, and the question there was the priority between such taxes and a federal lien, as in these causes.
In the course of the opinion in that case, the Supreme Court said:
“On the other hand, the federal statutes do not attempt to give priority in all cases to liens created under the paramount authority of the United States. The statute creating the federal lien here involved, I. R. C., Section 3670, does not in terms confer priority upon them.
‘ ‘ When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States, whether secured by liens or otherwise, by Section 3466 of the Revised Statutes. * * * In that circumstance, where all the property of the debtor is involved, Congress has protected the federal revenues by imposing an absolute priority. Where the debtor is not insolvent, Congress has failed to expressly provide for federal priority, with certain exceptions not relevant here, although the United States is free to pursue the whole of the debtors’ property wherever situated. * # *
“It does not follow, however, that the city’s liens must receive priority as a whole. We believe that priority of these statutory liens is determined by another principle of law, namely, ‘the first in time is first in right.’ # * * We think that Congress had this cardinal rule in mind when it enacted Section 3670, a' schedule of priority not being set forth therein. Thus the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate.
“* * * The United States is not interested in whether the state receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the federal lien. There is nothing in the language of Section 3672 to show that Congress intended antecedent federal tax liens to rank behind any but the specific categories of interests set out therein, and the legislative history lends support to this impression.”
*211 In the case of Exchange National Bank of Spokane v. United States, 147 Wash., 176, 265 P., 722, 62 A. L. R., 139, there was involved the question whether a lien under a federal statute which provides that, where the funds of an insolvent debtor are insufficient to pay all the debts due from him, “the debts due to the United States shall be first satisfied,” has priority over state tax liens. The court held that the grant by the states to the federal government of the power to levy taxes confers upon Congress the power to declare the priority of taxes levied by the United States over those assessed by the states.
In an annotation to that case (see 62 A. L. R., 147), it is said:
“From the few cases which seem to have arisen on this subject [rule of priority between federal and state taxes], it appears to he the general rule that a claim for taxes due the federal government has priority over a claim for taxes due the state government, or any political subdivision thereof * * *.”
In the case of Detroit Bank v. United States, 317 U. S., 329, 87 L. Ed., 304, 63 S. Ct., 297, the Detroit Court for the Southern District of Michigan held that a federal estate-tax lien, although unrecorded, was superior to a mortgage lien and to local, state and county liens for taxes, which had accrued after the death of the decedent. The Circuit Court of Appeals affirmed the judgment (127 F. [2d], 64), and the judgment of that court was affirmed by the United States Supreme Court. In that case Chief Justice Stone said:
“The lien attaches at the date of the decedent’s death, since the gross estate is determined as of that date and the estate tax itself becomes an obligation of the estate at that time without assessment. See Hertz v. Woodman, 218 U. S., 205; Ithaca Trust Co. v. United States, 279 U. S., 151, 155; United States v. Ayer, 12 F. (2d), 194; Rosenberg v. McLaughlin, 66 F. (2d), 271.”
In the case of Michigan v. United States, 317 U. S., 338, 87 L. Ed., 312, 63 S. Ct., 302, the state of Michigan claimed priority for state tax liens over other unrecorded liens, including an estate-tax lien of the federal government. In that case, Chief Justice Stone said:
‘ ‘ The establishment of a tax lien by Congress is an exercise *212 of its constitutional power 4 to lay and collect taxes. ’ Article I, Section 8 of the Constitution. United States v. Snyder, 149 U. S., 210. And laws of Congress enacted pursuant to the Constitution are by Article VI of the Constitution declared to be the supreme law of the land; and the judges in every state shall be bound thereby anything in the Constitution or laws of any state to the contrary notwithstanding.
“* * * Hence it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision. United States v. Snyder, supra; United States v. Greenville, 118 F. (2d), 963.”
In the case of United States v. Security Trust & Savings Bank, Ext., 340 U. S., 47, 95 L. Ed., 53, 71 S. Ct., 111, it was held that a tax lien of the United States is prior to an attachment lien, where the federal tax lien is recorded subsequent to the date of the attachment lien but prior to the date the attaching creditor obtains judgment. See annotation, 95 L. Ed., 59. In that case Justice Minton said:
“The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court’s classification of a lien as specific and perfected is entitled to weight, it is subject to re-examination by this court.”
An analogous situation arose in the case of United States v. White Bear Brewing Co., Inc. (April 9, 1956), U. S., There was involved in that case the question whether a federal tax lien had priority over a previously filed and recorded mechanic’s lien for a definite sum arising out of a performed contract to furnish labor and materials for the improvement of real estate.
The United State Circuit Court of Appeals for the Seventh Circuit in the same case (227 F. [2d], 359) held that, where a contractor had performed work for a corporation, upon completion thereof had recorded his mechanic’s lien pursuant to an Illinois statute and had commenced a foreclosure proceeding to enforce such lien before the Collector of Internal Revenue’s receipt of tax assessments against a corporation made under *213 Section 3670 of the Internal Revenue Code of 1939, the mechanic’s lien which was subsequently foreclosed had priority over the federal tax lien, in the absence of any showing that the corporation was insolvent. The court applied the doctrine “the first in time, the first in right,” citing United States v. City of New Britain, supra.
The Supreme Court, by a seven-to-two decision, without written opinion, reversed the judgment of the Circuit Court of Appeals. Justice Douglas dissented, with Justice Harlan concurring in the dissent. In his dissenting opinion, Justice Douglas lucidly explained the reason for his dissent as follows:
“I dissent. The court holds that a federal tax lien has priority over a statutory mechanic’s lien, even though the mechanic’s lien was specific, prior in time, perfected in the sense that everything possible under state law had been done to make it choate, and was being enforced before the federal tax lien arose. The mechanic’s lien arose out of a contract to furnish labor and materials for the improvement of the real estate. The contract had been performed, the mechanic’s lien recorded for a specific amount, and suit instituted to enforce the lien — all before the federal taxes were assessed and the tax liens recorded. Moreover, by the time the United States filed the present action to foreclose its tax liens, the mechanic’s lien had been reduced to judgment, and the real estate sold at public auction and transferred by the purchaser to others. In United States v. City of New Britain, 347 U. S., 81, 84, we said that liens under state law were ‘perfected in the sense that there is nothing more to be done to have a choate lien — when the identity of the • lienor, the property subject to the lien, and the amount of the lien are established.’ Accordingly, we held that the principle that ‘the first in time is the first in right’ {id., at 85) should be applied. I would apply the same principle here.
( Í sfc # *
“Here the lien is not general and inchoate. It is specific and choate. The lienor had an immediate right to ‘enforce his lien’ against the property. Ill. Rev. Stat. 1953, c. 82, Section 9. This is clearly more than ‘merely a lis pendens notice that a right to perfect a lien exists.’ 340 U. S., at 50. Indeed, the mechanic’s lienor had instituted suit to enforce the lien before *214 the federal tax lien arose and had completed enforcement of the lien by the time the United States instituted the present action.
“The court apparently holds that under 26 U. S. C., Section 3670, a lien that is specific and choate under state law, no matter how diligently enforced, can never prevail against a subsequent federal tax lien, short of reducing the lien to final judgment. That is new doctrine, not warranted by our decisions, and supportable only if the New Britain case were overruled. ’ ’
The position of the Supreme Court in the New Britain case and other cases above cited is contrary to the rule which this court believes should be applied in the instant causes. The effect of the federal rule is to render unstable real estate titles and to impair and perhaps destroy local government by sapping away its very life blood by pre-empting the funds arising from the comparatively light tax levies for local governmental purposes and thus destroying the value of the very property which is intended to return tax revenues, both state and federal. For instance, in the Bolee cause, the total sale price of the property in question was $15,900. The court costs were $311.07, leaving a balance of $15,588.93 for distribution. The federal lien was found to be $15,705.01 which exceeds the amount left for distribution and leaves nothing for state taxes unless, by some legerdemain, they are taken out of the mortgage and judgment lien funds arising from the sale, which liens are conceded to have priority over the federal tax lien. If there was no mortgage or judgment, there would be no payment of state taxes.
Recognizing, however, the position which the federal Supreme Court has taken on the issues involved from expressions of the court above quoted from the New Britain case and other cases, we are obliged to recognize the federal tax liens as having-priority over local and state tax liens, as found by the Court of Appeals.
The problem of the distribution of the funds in the instant causes remains to be considered. It is conceded that the mortgages and judgments are superior to the federal tax liens; that the federal tax liens are by this decision found to be superior *215 to the local or state tax liens; and that the local or state tax liens are superior to the mortgage and judgment liens.
In this revolving circle, some courts have preferred the mortgage, and with it the local tax lien, over the federal lien which is remitted to any proceeds of sale remaining. See Ferris v. Chic-Mint Gum Co., 14 Del. Ch., 232, 124 A., 577; Brown v. General Laundry Services, Inc., 53-1 U. S. T. C., paragraph 9272.
But this plan of distribution fails to give the federal tax lien the priority of distribution to which, under the federal authorities, it is entitled. Another scheme of distribution, which was substantially adopted by the Court of Appeals in the instant causes, and which has sanction under some authorities as the best possible solution under the circumstances, calls for a setting aside of a fund equal to the total amount due to the mortgagees and judgment creditors under their liens which by federal statute have priority over the federal tax lien.
This court is of the opinion that where, in a judicial sale of land incumbered by a state tax lien, a federal tax lien and other creditor liens, which latter liens are preferred by federal statute over the federal tax lien, the proceeds of the sale are insufficient to pay all such lien incumbrances in full, there shall be set aside from the proceeds of the sale a fund equal to the amount of the creditor liens so preferred over the federal tax lien to the extent that the proceeds of sale are sufficient, out of which fund the state taxes shall first be paid, and the remainder of such fund shall be paid to creditor lienholders, whose liens are so preferred over the federal tax lien, according to their lien priority, and the remainder of the proceeds of sale, if any, shall be paid to the United States on its tax lien. '
This solution is subject to criticism because it gives the federal tax lien an unwarranted advantage at the expense of the prior mortgage and judgment liens, to the extent that such liens have been subordinated to the state tax lien, but it seems to be the most equitable solution under the impasse presented.
In the Merriweather cause, distribution of the proceeds of sale shall be made first to the mortgagee to the extent of the mortgage except that out of such sum the state taxes shall be paid and the remainder of the proceeds of sale shall be paid to the United States on its tax lien.
*216 In the Bolee cause, distribution of the proceeds of sale shall be made first to the mortgagee to the extent of the mortgage; second, to the judgment creditor to the extent of his judgment, except that out of such latter sum the state taxes shall be paid ; and third, the balance of such proceeds of sale shall be paid to the United States on its tax lien.
The judgment of the Court of Appeals is modified with reference to the distribution of the sale in each of these causes as above set forth and otherwise the judgment of the Court of Appeals is affirmed.

Judgment modified and, as modified, affirmed.

Matthias, Zimmerman, Stewart and Taut, JJ., concur.
Weygandt, C. J., and Bell, J., dissent.