[Civ. No. 16871. Third Dist. Mar. 30, 1978.]

VADA BALDASSARI et al., Plaintiffs and Respondents, v.
UNITED STATES OF AMERICA, Defendant and Appellant.

COUNSEL

M. Carr Ferguson, Assistant Attorney General, Myron C. Baum, Acting Assistant Attorney General, Gilbert E. Andrews, Richard Farber, Aaron P. Rosenfeld, Harold S. Larsen and D. Dwayne Keyes, United States Attorney, for Defendant and Appellant.

Earl D. Kendall, Sr., and Frank Samstag for Plaintiffs and Respondents.

OPINION

REGAN, J.—In this Placer County Superior Court action to quiet title to two parcels of real property which had been subjected to federal "nominee" tax liens, plaintiffs' motion for summary judgment decreeing the liens to be invalid as a matter of law was granted. This appeal followed.

On May 27, 1974, penalties were assessed against James P. Baldassari, Sr. (hereafter sometimes referred to as taxpayer), pursuant to section 6672 of the Internal Revenue Code of 1954 (James P. Baldassari, Sr., is the husband of plaintiff Vada Baldassari and the father of plaintiff James P. Baldassari, Jr.). On November 26 and November 28, 1975, the Internal Revenue Service (IRS) filed a notice of federal tax lien, listing as taxpayer "Vada Baldassari as nominee of James P. Baldassari," on property hereafter referred to as the Nicholas Road property. On March 10, 1976, the IRS filed a notice of federal tax lien, listing as taxpayer "James P. Baldassari, Jr., and Vada Baldassari as nominees of James P. Baldassari," on property hereafter referred to as Route 1.

It is these notices of federal tax lien which are the subject of the plaintiffs' complaint to quiet title, which was brought pursuant to both federal and state statute (28 U.S.C.A. § 2410; Code Civ. Proc., § 738). The plaintiffs allege in their complaint and in their motion for summary judgment, that as of June 24, 1975, they were the sole owners of the Route 1 property, as joint tenants, that they were not the nominees of James P. Baldassari, Sr., and that they did not owe any federal income tax. It was further alleged that the Nicholas Road property had been deeded to Vada Baldassari as her sole and separate property, that she was not the nominee of James P. Baldassari, Sr., and that she did not owe any federal income tax.

Plaintiffs contend that the IRS had no authority to file "nominee" liens and further contend that the filing of such liens deprives them of their property without due process of law in violation of the Fifth Amendment to the federal Constitution.

Defendant United States filed an opposition to plaintiffs' motion, asserting that the nominee liens were neither beyond the authority of the IRS nor unconstitutional, and that summary judgment was inappropriate because there existed material issues of fact concerning whether plaintiffs were the true owners of the properties or were merely holding title thereto as nominees of the taxpayer.

The trial court, while accepting defendant's position that the IRS had the authority to file nominee liens, nevertheless was of the opinion plaintiffs were denied due process of law in that "Some sort of hearing is mandatory before the lien attaches under constitutional requirements."

The liens in question arose pursuant to section 6321 of the Internal Revenue Code of 1954, which provides for liens in favor of the United States against real property belonging to a taxpayer in the amount of the tax assessed plus interest and penalties. Although legal titles to the properties in question were not in the taxpayer (Baldassari, Sr.) the IRS determined through information evidenced by depositions, documents and materials filed with the lower court that the two parcels of real property were likely held by plaintiffs as "nominees" only and that the property in reality was that of the taxpayer, transferred to put it beyond reach of creditors. Having so determined, it was necessary for the notice of lien to be filed and recorded in nominee form since section 6323 of the Internal Revenue Code of 1954 provides that no such lien is valid as against any purchaser, holder of a security interest, mechanic's lien, or judgment lien creditor until proper notice thereof has been filed pursuant to law.

■ Although plaintiffs take issue with authorities cited by defendant, we are convinced that the statutory pattern of the internal revenue laws and the cases, taken together, authorize the filing of nominee liens under circumstances in which the IRS has reasonable cause to believe that the property against which the lien is filed may have been transferred to a third party to avoid creditors, including the federal government to which taxes are owed or expected to be owed. Internal Revenue Code section 6321 has been held by the United States Supreme Court not only to afford the right to impose a *lien* on property in the hands of a third party

straw man or alter ego, but the court went further and held that section · 6331 permitted *levy* (distraint, seizure and sale) upon such property. (*G. M. Leasing Corp.* v. *United States* (1977) 429 U.S. 338, 350-351 [50 L.Ed.2d 530, 542, 97 S.Ct. 619].) Plaintiffs would attempt to restrict a holding such as that in the *G.M. Leasing* case to a strictly "taxpayer lien" where the transfer of property has taken place only after tax assessments were made and other liens filed, or where deficiency hearings were being held, or other administrative determinations of ownership had previously been made. We do not see the powers of the federal government to collect or assure the collection of taxes as so restricted. For example, it has been held that the statutory right of the government to collect taxes from a transferee of a taxpayer's property by imposition of a lien thereon, where the property was fraudulently transferred to avoid its seizure, is quite analogous to the common law remedies in cases of fraudulent transfers. (See, e.g., *United States* v. *Kensington Shipyard & Drydock Corp.* (3d Cir. 1950) 187 F.2d 709, 712-713.)

■    Such summary procedures as described above do not violate due process of law by not affording a prefiling hearing, since there exists a procedure for a later judicial determination of all the issues of actual liability. (*Phillips* v. *Commissioner* (1931) 283 U.S. 589, 593-595 [75 L.Ed. 1289, 1295-1296, 51 S.Ct. 608], see also *Felland* v. *Wilkinson* (W.D. Wis. 1928) 33 F.2d 961, 962-963.)

Plaintiffs would draw an analogy between the tax lien procedures and the prejudgment attachment of real property which was declared unconstitutional in *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]. No such analogy exists. Attachment under the California statutes in *Randone* involved a seizure of property. In the tax case before us there is no seizure in the *Randone* sense. It was a failure to recognize this which, at least in part, led the trial court to base the summary judgment on "seizure" without a hearing. We do not perceive a "seizure" in the constitutional sense, as the term was used by the trial court, in the act of filing notices of tax liens. The notice procedure did not deprive plaintiffs of their title, control, possession or enjoyment of the properties in question. The only effect was to place a cloud on the title. We are aware of no cases holding that such a filing of lien is a taking or seizure of property in the constitutional sense. In this connection, we note that the creation of the statutory automatic tax lien (§ 6321) upon real property owned by a delinquent taxpayer has been held to be a proper exercise by Congress of its constitutional authority to levy and collect taxes. (*Michigan* v. *United States* (1943) 317 U.S. 338,

340 [87 L.Ed. 312, 314, 63 S.Ct. 302].) The purpose of filing the notice of lien was not to *create* it, but only to maintain its *priority* over certain other liens, as provided in Internal Revenue Code section 6323.

Were we to assume, arguendo, that the filing of the notice of lien could be regarded as a "seizure" of plaintiffs' property, there would still be no right to a prefiling hearing. The United States Supreme Court has made it clear that a prior hearing is not necessary even to *collect* taxes by seizure and sale of property. Thus, in *Phillips* v. *Commissioner of Internal Revenue, supra,* the court pointed out that with respect to taxes, property rights must yield *provisionally* to governmental needs, and where opportunity is afforded for a later determination of legal rights, summary procedures to collect taxes are valid. (See 283 U.S. at p. 595 [75 L.Ed. at p. 1296]; see, in accord, *Fuentes* v. *Shevin* (1972) 407 U.S. 67, 91-92 [32 L.Ed.2d 556, 576, 92 S.Ct. 1983]; *Kelly* v. *Springett* (9th Cir. 1975) 527 F.2d 1090; *Bomher* v. *Reagan* (9th Cir. 1975) 522 F.2d 1201, 1202.) This reasoning and rule is applied whether the property from which the tax revenue is to be obtained is in the hands of the taxpayer himself or is reasonably believed to be his property in the hands of a transferee or nominee. (See *Bos Lines, Inc.* v. *C.I.R.* (8th Cir. 1965) 354 F.2d 830, 834-835.) The collection of taxes without prior hearing being constitutional, the filing of liens *preceding* any collection, without prior hearing, is a fortiori constitutional, so long as there is an effective post-filing hearing procedure.

There is such post-filing procedure here. Section 2410 of the United States Code provides for a quiet title action to discharge a federal lien on property to be filed in either a federal or state court. This procedure is pursued herein by plaintiffs. It follows that since plaintiffs have the opportunity to establish that they are in fact the true owners, the trial court erred in holding that there was an unconstitutional seizure of property. Moreover, since the parties have shown no *statutory* requirement of a prefiling hearing for nominee liens and we have found none in our own research,[1] there can be no sound basis for this summary judgment. The record shows the existence of an issue of fact as to the true ownership of the land in question, insofar as federal tax liability is concerned. The instant action is the vehicle for deciding such issue. The validity of the tax liens depends upon whether plaintiffs are the bona fide owners of the properties or are only nominees.

---

[1]See, e.g., Internal Revenue Code sections 6331, 6901, 7402.

The judgment is reversed and the cause remanded to the trial court for trial on the issues framed by the complaint, the answer and any pretrial order.

Puglia, P. J., and Paras, J., concurred.